## Smith, Appellant, *v.* Halfacre.

All officers in this state are elected for limited terms, which terms expire at the time of the general elections for the respective offices.

Where a judicial district was created by the legislature, at such a time that the first election for judge did not take place at the regular election, it was determined that the judge held his office until the next regular general election for circuit judges.

APPEAL from the circuit court of the county of Marshall.

Frederick Halfacre brought an action of debt in the circuit court of Marshall county, to the November term, 1841, for the use of H. B. Howell, against John P. Smith, on defendant's promissory note under seal for one hundred and fifteen dollars. Declaration in the usual form. Defendant put in a special plea, setting out that Jas. M. Howry, who assumes to act in this case as judge of said court, is not judge of said court, or of any other circuit court in the state of Mississippi, and is not legally and constitutionally authorized to hear and determine this cause; that Frederick W. Huling was elected judge of the eighth judicial district on the 4th and 5th days of July, 1836, and was only commissioned as judge by virtue of said election, (a copy of a commission from the governor of the state was exhibited in the plea;) that, by virtue of said commission, he discharged the duties of the office of judge of said district for four years, and was again, on the first Monday and day following in November, 1840, elected judge of said district, and duly commissioned by the governor of the state on the 30th November, 1840, (a copy of the commission was exhibited in the plea.) The commission stated that he was elected to fill the vacancy occasioned by his resignation, and he is thereby commissioned for the term prescribed by law, and that he is now legally and constitutionally the judge of said district, &c. All of which defendant is ready to verify by said commissions under the great seal of the state.

Smith, Appellant, *v.* Halfacre.

Plaintiff replied, alleging that, at the general election held on first Monday and day following in November, 1841, said James M. Howry was elected judge of said district, and duly commissioned by the governor of the. state on —— day of November, 1841, (a copy of the commission was exhibited in the replication,) and that by virtue thereof, and of the oath of office by him taken, he is the judge of said district, &c.

Defendant demurred, and, for cause of demurrer, assigned that the election of said Howry, as stated in the plaintiff's replication, and the commission thereupon issued by the governor of the state, were void and unauthorized by law, said office being at the time filled by Huling.

The demurrer was overruled, and defendant failing to rejoin to plaintiff's replication, judgment by default rendered by the court. From which judgment of the court defendant appealed.

The provision of the 11th section of the 4th article of the constitution, under which both parties claimed the office, is as follows: "The judges of the circuit court shall be elected by the qualified voters of each judicial district, and hold their offices for the term of four years, and reside in their respective districts."

Under this provision it was contended by one party that the term of office of the judge first elected was. four years from the time of his election; and by the other, that, inasmuch as the district was created after the regular general election, the officer first elected held only until the first regular election after his appointment.

A. M. Clayton for appellant.

The question intended to be presented by the record in this case, is, whether F. W. Huling or Jas. M. Howry be the judge of the eighth judicial district in this state. . The question involves a construction of the constitution in an important point. Several clauses of that instrument will have to be adverted to in its construction; of these the most important are, Art. 1, sec. 30, and Art. 4, secs. 11 and 13. The first of these says that "the tenure of all offices shall be for some limited period of time;" the second, that "the judges of the circuit court shall hold their offices for the term of four years;" and the last provides "for the creation of conveni-

Smith, Appellant, *v.* Halfacre.

ent districts." A new district, called the eighth, was created by the Legislature in 1836, a judge was, by the act, directed to be elected, and to be commissioned for the term prescribed by the constitution and laws of this state. Pamp. Acts of 1836, page 44. Under this act Huling was elected on the 4th and 5th of July, 1836, and was commissioned for the term prescribed by law. In the outset I will remark, that "the tenure by which an office is held does not depend upon the commission which the governor may think proper to give. It is only evidence of the appointment. The tenure depends upon the provisions of the act creating the office, and upon the constitution." Jeter *ads.* State, 1 McCord, 233. The tenure of the office in this instance was, by the plainest language, four years. It is not questioned but that the office was filled by his election. An office once duly filled is not vacant till the legal term of service expires, or till the death, resignation or removal of the incumbent. Johnson *v.* Wilson *el al.* 2 N. Hamp. Rep. 202; 5 Am. Dig. 398; Marbury *v.* Madison, 1 Cranch, 52.

The laying off the eighth judicial district was the exercise of a legislative power, (State *v.* Champlin, 2 Bailey, 222,) and was the creation of a new office. The State *v.* Porter, 1 Ala. Rep. new series, 707. The 13th sec. of the 4th art. of the constitution above referred to, provides for such acts. The office thus created was a new one; its tenure was for the constitutional term, not for any portion or fragment of it. There had been no previous incumbent, no vacancy by death, resignation, removal or otherwise, and no unexpired term to be filled. The consequence is that the incumbent was judge for four years.

A writ of election was issued, however, and an election for judge in that district holden in November, 1837. At that election Huling was not a candidate. He protested against the election, and declared it unconstitutional and void; but still a majority of the votes cast were polled for him. That prevented the raising of the present question at that time. The election in 1837 was void, for the plain reason that there was no vacancy. Hill *v.* The State, 1 Alaba. R., new series, 561. It was void upon the plainest general principles. It was an attempt to resume an office which had been legally filled. The conferring and receiving the office was a contract which could not be violated by either party; it was a

grant which could not be recalled by the state; it conferred a vested right, which could not be divested. Marbury *v.* Madison, 1 Cranch; Fletcher *v.* Peck, 6 Cranch; Dartmouth College *v.* Woodward, 4 Wheaton; Allen *v.* McKean, 1 Sumner, 279; The People *v.* Gary, 6 Cowen, 651; same case in court of errors, 9 Cowen, 640. This last case is strikingly in point. It was a proceeding involving the office of a justice of the peace in New York. In that state justices are appointed for four years, and it was held not to be competent to the legislature, to extend or to abridge their term of service.

After the election in 1837, Judge Huling continued to hold under the election of 1836, and to disclaim all rights under the election of 1837. Matters continued in this situation until near July, 1840, when he urged Governor McNutt to issue a new writ of election. The governor refused to do this, unless the judge would resign all claim under the election of 1837; which he very promptly did, believing that election to be void. A writ of election was then issued to fill the unexpired term of office, dating from the election in 1837, and running on to November, 1841. The election was held in November, 1840, when Huling was again elected, and commissioned for the term prescribed by law. Under that election he claimed the office for four years. At the November election, 1841, Huling was not a candidate. James M. Howry was elected, and commissioned for the time prescribed by the constitution, and the controversy grows out of these two elections.

On the part of Huling it is contended, that there can be no election by the people of a circuit judge for a shorter period than four years, and that the words "unexpired term" have no reference to that office. Those words are no where used in the constitution in connexion with that office; when employed expressly, they relate either to the judges of the High Court, or to some other officers. The common law sense of a term for years, does not signify "merely the time specified in the instrument, but the estate and interest that passes by it, and therefore the term may expire during the continuance of the time." Therefore if an estate be granted to A for the term of four years, and after the term to B, if A forfeits the estate at the end of two years, B's estate immediately commences. 2 Black. 116. It is a rule of construction in regard

to the constitution, that when that instrument employs words that
have a definite known meaning in the common law, they shall
bear that meaning in the constitution. Story's Com. Con. It is
to be presumed, then, that such was the meaning annexed to the
words for the "term of four years," by the framers of the consti-
tution, especially as they explained their meaning to be different
in the clauses in regard to the High Court. If that is the meaning
of these words, whenever the office of circuit judge becomes va-
cant, the successor when elected is entitled to the office for the
term of four years. And thus the election of Judge Howry was
wholly inoperative, because there was no vacancy. It is to be ob-
served, that this precise construction is put upon the act of Con-
gress in regard to territorial judges. Their tenure of office is *"for
the term of four years,"* and every one appointed, whether his
predecessor have served four years or not, is appointed for the full
term of four years. If this construction is not adopted, the ten-
ure of the office is certainly not for four years, in the practical op-
eration of the government.

The only objection to this construction is derived from the fifth
section of the schedule annexed to the constitution, by which it is
said to have been intended that all officers should be elected at the
general elections. I understand that in the case of Henderson *v.*
Brown, in this court, Judge Trotter has delivered an opinion,
which has been concurred in by his honor Judge Turner, that the
section in question does not apply to judicial officers, at least so
far as to control their tenure of office.

But should it be held that this section is applicable to the circuit
judges, it can only be so in reference to such of the officers of
that character as were in existence at the time of the first general
election under the new constitution. To give to that section any
other construction, would place it in direct conflict with the 11th
section, article 4, whenever a new circuit is created, and a judge
elected for it, and make the tenure of his office not four years,
but until the next general election. Such a construction, leading
to such consequences, must be avoided. It is to be observed, too,
that in the first law passed in regard to the election of judges, a
law still in force, it is not required that their election shall come
on at the same time with the election of other officers. How. &

Smith, Appellant, *v.* Halfacre.

Hutch. 479. The general election law confines its provisions exclusively to such officers as are biennially elected. Ib. 88. While, then, the judges are to be elected in the *same manner* with other officers, they are not required to be elected at the same time, and such requisition in regard to judges in new circuits, would deprive them of the office at a period short of the constitutional term.

It would seem that the legislature, in their action on the subject of the tenure of office, have put a construction on the constitution, that by a grant of office for a term of years, the state parted with the office for that length of time, whether the incumbent held it so long or not, and that the successor took the office but for the balance of the term. I have already endeavored to show, that this construction is contrary to the settled meaning of the words term of years, and to the practice of other governments in construing the same words. Another reason I would offer is this : When the incumbent ceases to exist as an officer, the grant of office returns to the granting power, the state. It is like the return of an estate for years, to the owner of the inheritance; the estate for years becomes merged in the fee—the less is swallowed up in the greater. Just so when an office for years becomes vacant, it reverts to the granting power, and when a new grant is made, it is for the full period. It is true that estates for years may be so created, by express words, as to be made to attend on the inheritance; so a restriction may be made upon this rule as applied to an office, as is done in reference to the judges of this court. But it requires express words to do it, and in their absence the general rule will prevail.

But this construction, whether right or wrong, cannot influence this case. Here there is no fraction of a term. The vacancy in the office arose from the efflux of time, the full period had run out, and in July, 1840, there was no balance of an unexpired term, for which an election could be held. And this brings us to the point in which there is the only semblance of difficulty in the whole cause. The constitution, art. 5, sec. 13, says, " all vacancies not provided for in this constitution shall be filled in such manner as the legislature may prescribe." Vacancies in the office of circuit judge are not provided for in that instrument. The legislature has provided for them by the 26th section of the act of

1833, in regard to elections. H. & H. 95. That clause provides, that when " any vacancy shall occur in any state office by death, resignation, removal, or otherwise, the governor shall issue writs of election to fill the unexpired term." The word otherwise, in the enumeration, must mean vacancies occasioned by the efflux of time. It was the intention of the legislature by that section to provide for all vacancies, and they have in truth provided for every possible contingency. But if, in the latter part of the clause, they have confined the time contrary to the constitution to an unexpired term, this latter part coming in conflict with the constitution, is void. The election must be to fill the vacancy, and when elected, the officer is entitled to his commission for the constitutional term, independent of any legislative provision.

An act of the legislature was passed in 1839, purporting to confirm the elections in the northern counties, held in 1837. If the election held for judge at that time was void, the confirmation was likewise void. Com. Dig., title Confirmation, D, 1, 5; Littleton, section 541.

It is worthy of remark that the office of judge is a high trust, confided to the incumbent by the people; and the office when conferred bestows on him the right to hold it for the constitutional period, independent of any opinion of his, or of the executive. The correspondence between the governor and the judge should therefore have no influence in this case; and it is manifest that the judge throughout insisted on his rights, and did no act which could be construed into a waiver of them.

Gholson, for appellee.

The questions to be decided in this case are:

1st. Whether on the creation by the legislature of the 8th judicial district of the state of Mississippi, the judge elected on the first Monday and day following in July, 1836, was entitled to hold under that election for the term of four years from that time.

2d. Admitting that he was entitled to hold under that election for four years, what were the consequences of the legislature failing to provide for an election, and the people to elect, on the first Monday and day following in July, 1840, when the term of the judge first elected expired?

Smith, Appellant, *v.* Halfacre.

In relation to the first question, it is contended that the judge elected on the first Monday and day following in July 1836, was not entitled to hold for four years from that time; that he was only entitled to hold until the general election in November, 1837.

It is contended that the constitution of the state of Mississippi requires that all state and county officers provided for in the constitution should be regularly elected at a general election.

That such was the intention of the framers of the constitution, is evidenced by the frequent recurrence of the phrase "general election," and that it was their intention that this general election should be held biennially on the first Monday and day following in November is equally obvious.  Art. 3, sec. 5, 6, 29.  Art. 7, sec. 9; Mode of Revising Constitution, sched. sec. 5.

The fifth section of the schedule seems decisive of the intention of the constitution in this respect.  The judges of the circuit court are required by the constitution to be elected for the term of four years; but in order that the election of the judges might regularly come on at the general election, the judges first elected were to hold from May, 1833, as if elected in November, 1833.  They were to hold for four years and six months.  What stronger indication of the intention of the constitution could be required?

The present constitution of the state of Mississippi was adopted on the 26th of October, 1832.

The first legislature under that constitution convened on the 7th of January, 1833.

By an act passed 2d March, 1833, (Laws of Miss. Sept. 1833, c. 2, p. 23,) that legislature exercised the constitutional power given them, (art. 4, sec. 13,) to divide the state into judicial districts.  Four districts were created.  The constitution itself provided for the time the judges of those districts should be elected, (sched. sec. 5,) and for the term of their office.

As to the four judges first elected, there can, it seems, be no difference of opinion.  They held from November 1833 to November 1837, at which time their successors were elected and a regular succession has been since continued.

By an act of the legislature, passed 25th Dec. 1833, two new judicial districts, the 5th and 6th, were created.  The judge of the 5th district was elected on the first Monday and day following in

March 1834, the judge of the 6th on the second Monday and day following of the same month. The law provided, (section 9,) that these judges should be commissioned for the *term* prescribed by the constitution and laws of the state.

The question now arose under the constitution, whether on the creation of a new judicial district, the judge first elected held for four years from the time of his election, what was the term prescribed as to a judicial officer thus newly brought into existence?

It is contended that it was the intention of the constitution, and that every reason that would require the judges first elected to be regularly elected at general elections, would equally apply to new judges brought into existence by the creation of new districts.

It must have been with such intention that all officers provided for in the constitution were limited to terms of regular biennial periods—two, four, and six years.

For what other object could have been inserted in the schedule the provision that the judges first elected should hold for prolonged terms? No other motive can be assigned than that the judges should be elected at the general election.

The convention must have foreseen that unless such elections were brought on at the general election, there might be a failure of the people to elect, or at least that but few might vote at special elections. That there was great wisdom in this provision cannot be doubted, and the reason applies with equal force to the new, as to the old judicial districts.

It was further intended, for the reason that frequent elections occurring at irregular periods, would be attended with inconvenience and loss of time to the people; to avoid which, when requiring so many officers to be elected by the people, must have been intended by the convention.

It is contended that a judge of the circuit court called into existence by the creation of a new district, and county officers by the formation of new counties, are equally provided for in the constitution, and stand on the same footing. All are equally required by the constitution to be elected for a particular term.

We contend that the action of the government and the people, since the formation of the new constitution, both in reference to new judicial districts and new counties, has been uniform, and in

Smith, Appellant, *v.* Halfacre.

acquiescence with the principle laid down. That this forms an authoritative, contemporaneous construction of the constitution, on which the court should rely, and which should not now be changed, unless most obviously incorrect.

The court may well consider the consequences which would result from a change now in the construction of the constitution which has been acquiesced in by the people. The result, it is contended, would be irretrievable confusion. One-half of the circuit judges of the state, and all the county officers of more than half the counties in the state, are now holding under void elections, if the construction contended for on the part of the appellant should prevail.

It is contended that the constitution of the United States, in reference to senators from new states, and to the classification of senators, (art. 1. sec. 3, art. 4, sec. 3,) and the construction which has been placed upon it and uniformly acted on, furnishes an analogy to the present case. Senators are required to be elected for six years; the classification provided for only extended to the session of the senate after the first election. No provision is made as to senators from states newly admitted. Yet the same rule has been uniformly applied to them, they hold from the 4th of March, no matter when elected, and for two, four or six years, as may be decided by ballot, and with reference to the terms of the other senators.

In relation to the consequences which would follow if the court should decide that the election of the judge of the 8th judicial district, on the first Monday in July 1836, gave the judge then elected a right to hold until the first Monday in July 1840:

It is to be observed that in the act of 1836, creating the 8th judicial district, there is no provision for any subsequent election.

In November, 1837, an election was actually held, and Frederick W. Huling elected, and commissioned and qualified, claiming however to hold under the election in 1836.

In June 1840 he resigns the office of judge under the election of 1837, and the governor issues a writ of election to fill the vacancy thus occasioned. An election in pursuance of such writ was held on the first Monday in November, 1840.

It is contended that this election was either void, or could give no right to hold longer than the first Monday in November, 1841.

That when the people are called upon at a special election to elect for one year, it can never be held that the officer then elected shall hold under that election for four years.

We therefore contend that the judge elected on the first Monday in November, 1840, cannot now be the judge of the 8th judicial district.

Quitman, on the same side.

G. S. Yerger in reply.

1. The constitution having declared that all offices shall be held for a limited period, and should be filled by election by the people, if nothing had been said in the constitution, as to the time when the elections should be held, the power to appoint and fix the time, would necessarily have been in the legislature. Untrammelled by constitutional provisions, the legislature might have so organized the government that the judges of the different districts, and other civil officers, should be elected at the same time, or at different times in different districts or counties.

No one will doubt, that, independent of constitutional restriction, the time and mode of election is a legislative power. If the legislature could not appoint and fix the time of holding elections required to be held, the government could not be organized. For, although where the law declares that an election shall be held, the executive, if no time is appointed, may, in order to have the law executed, issue a writ of election, and appoint the time; yet, until the government is organized, there is no executive. And moreover, the power of the executive to order the execution of the law, by issuing a writ of election, exists only where the legislature has not appointed a time themselves. If they have directed the time when an election shall be held, the time forms part of the law, and the writ of election must order it at such time. It is only, therefore, when the law peremptorily requires and directs an *election,* but says nothing as to the time, that the executive, by virtue of his power to see that the laws are faithfully executed, can carry the law into effect by appointing the time.

I assume it, then, as an undeniable position, that, in regard to the time when the different elections should be held to fill all offi-

Smith, Appellant, *v.* Halfacre.

ces which existed at the time of the formation of the constitution, or which might, by the authority of the law, be created afterwards, that they might fix the time different in different districts and different officers, unless *restricted* from doing so by the constitution itself.

If the constitution has *fixed* a time for all officers to be elected, it is then a total restriction upon the power of the legislature. If it has fixed the time when some particular offices shall be filled by election, and said nothing as to others, then the restriction only applies to the offices and officers so designated and pointed out. If the constitution has fixed a *period* for the *offices then in existence* to be filled by election, but says nothing as to those which may be subsequently created, it necessarily follows that, as to the last, there is no restriction on legislative power, and the legislature may designate the period of election.

Let us, then, examine the different provisions in the constitution, and see whether any *time* was designated when the *officers* should be appointed by the people; and if such time has been appointed, whether it embraced all *existing and future offices*, or *only the former*. This point decides the whole case.

Art. 4, sec. 2, provides that the state shall be divided into three districts, and the electors of each district shall elect one of the judges of the high court, for six years.

Art. 4, sec. 11, provides that the judges of the circuit courts shall be elected by the electors of each *judicial district*, for four years.

Art. 4, sec. 16, provides that the electors of the whole state shall elect a chancellor, for the term of six years.

And this is the language used in reference to every office in the constitution, except the members of the legislature and senators. By art. 3, sec. 6, the representatives shall be elected every two years: on the first Monday and Tuesday in November. And by art. 3, sec. 29, it is provided that the first election shall be on the first Monday and Tuesday of November, 1833, and *thereafter* biennial elections for *senators*, to fill the places of those whose term of service expires.

It is evident that not one of the foregoing provisions, as to judicial officers, has appointed *the time when they shall be elected,*

and, if there were no other provision in the constitution, the time would necessarily have to be fixed by the legislature. The only clause in the constitution that, by any possible construction, can be regarded as having *fixed* the time when the *elections* for civil officers should be held, is the 5th section of the schedule; and *that*, by its express language, only directs the election "of the judges of the high court, (supposing it to apply to judicial officers,) the chancellor, and the judges of the circuit courts, for the districts and circuits then in existence."

The language of this section is wholly unambiguous. It leaves no room for construction. It says, "the legislature shall, at their first session, order an election to be held in every county of the state, on the first Monday of May, 1833, for *all state and county officers* under this constitution, (members of the legislature excepted;) and the officers then elected shall continue in office until the succeeding general election, (which by previous part of the constitution is November, 1833,) *and after* in the same manner as if the election had taken place at the time last aforesaid."

By this provision, the constitutional term of each of the officers began to run from the election in November; for, although they are elected *in May*, yet they are to hold the office until November, *and hold it after*, in the same manner as if the election had taken place in November. Their constitutional term began, then, to run, by this express provision, from and after the November election. But did the constitutional term of an office not in existence for years afterwards, begin to run in November, 1833? Because the constitution directs existing offices to be filled in November, 1833, *by election*, does it necessarily follow that cases not embraced (to wit: offices afterwards created,) must be then elected?

But what offices were then *directed* to be elected and filled the first Monday in November? The office of judges of high court; the office of chancellor; the office of probate judges for the then existing counties; the office of judge for the different judicial districts then in existence. There were then, we will say, four circuits or judicial districts. The act says, the judges for these several districts shall be elected, &c. and hold their office from Nov. 1833, for the constitutional term. *And*, says the act, the *officers then (not hereafter) elected*, shall continue in office, &c. Not

Smith, Appellant, *v.* Halfacre.

one word is said in relation to the time when the judge of a district subsequently created, and not then in existence, shall be elected. Not a word is said as to when the probate judge of a *county* subsequently created, shall be elected. Not one word is said as to the time when an office of any kind subsequently created shall be filled by election. The constitution is silent on these points. No *mandate* or direction is given to the legislature, but they are left to appoint such time as they may think proper.

Here, then, are cases not provided for by the constitution; or rather, are left to the discretion of the legislature.

It has been argued that it was *the intention* of the constitution to have all *judicial* and other *officers* elected at the general election, named in the constitution. Where is the language from which such intention, as to *offices* subsequently created, can be inferred? Does it say that all offices now or *hereafter* to be appointed, shall be elected on general election days? No. It only says, the *officers then*, not afterwards, shall be elected, &c. and hold from November. The language cannot be tortured into such meaning. We may *guess*, or *conjecture*, or suppose this was their meaning; but guess work will not do in construing constitutions. The *intention* must be gathered *from* the words or language used; and in the language of chief justice Marshall, the enlightened patriots who framed our constitution, and the people who adopted it, must be understood to have *employed words in their natural sense*, and to *have intended what they have said.* 1 Story's Com. 403; Gibbons *v.* Odgen, 9 Wheat. 1, &c.

It is true, the spirit, &c. must be observed; but this spirit is to be collected chiefly from the letter. 1 Story's Com. 411; Sturges *v.* Crowninshield, 4 Wheat. 122.

"If," says the supreme court of the United States, "the plain meaning of a provision, not contradicted by other provisions in the same instrument, is to be disregarded, *because we believe the framers could not intend what they say*, it must be one where the absurdity and injustice of applying the provision to the case would be so monstrous that all mankind would, without hesitation, unite in rejecting the application." "And," says Mr. Justice Story, "this language has reference to a case where the words of a constitutional provision are sought to be restricted. But it appears of

equal force where they are sought to be enlarged." 1 Story's Com. 411. Here the court is asked to infer an *intention,* which *inference* contradicts the express language used.

Where the provision is remedial, it ought to be construed liberally; but this liberality of exposition is clearly inadmissible if it extends beyond the just and ordinary sense of the terms. 1 Story, 412.

In order to sustain the construction contended for, the court must add to the section the necessary words, by mere supposition or conjecture. This is not allowed in wills or any instrument. 9 Yerger, 159, and cases cited.

It is thus demonstrable that the constitution has not, as to offices *subsequently* created, appointed any specific time of election; it therefore devolved on the legislature, and although it might be more convenient for them to appoint a *general election day,* yet they are to judge of it and fix the day: that this is a subsequently created office. Vide 1 Ala. Rep. 707, new series.

In the act creating the eighth district, they appointed and fixed —— July, 1836, and declared the judge should be elected the constitutional term of four years. Nothing is said about a subsequent election after the expiration of the first four years; but it is necessarily *implied* that, after the expiration of the term, another election shall be held. It is this necessary implication by which your honors hold your seats; for not one word is said in the constitution as to any election but the first, as to existing offices. But the constitution says you shall be elected for six years; and the first election being fixed on, it is necessarily implied that at the expiration of that term an election shall be held for a successor.

But the law is plain. The act of March, 1833, says the judges of the circuit courts shall be elected by the qualified electors of their respective districts, at the places of holding elections for members of the legislature, which elections shall be conducted in the manner prescribed by law for the general elections. By this law, when an election for circuit judge takes place, on a given day appointed by the legislature, or by the law *creating* the new district, the party is elected for four years *only,* that being the constitutional term. At the end of that *term,* unless the office is abol-

ished, there must, of necessity, be another judge elected, or the office is vacant.

The law establishing the eighth judicial district cannot be intended to mean that the judge shall be elected the first term, and *the office should remain unfilled afterwards.* The general law provides the place and manner of election; and if the office of judge of the eighth district *exists,* it must, by the provisions of the constitution and the law, be filled by election. This election can be held only. *after* the term expires. It is then the duty of the executive to order the election.

The only question, then, is, suppose an election is ordered, not immediately on the expiration of the term, but a month or year afterwards, and the incumbent is elected, when does his second term commence? Does it, by *relation,* take effect from the expiration of the preceding term, or commence from the election? This question is necessary to be settled, because Mr. Huling's first term expired in July, 1840. Huling was elected again in November, 1840.

Unless there is something in the constitution which *requires* the office to take effect by relation, we think the term commences with the election. If there is no election at the end of the first four years, the office *exists, but is vacant;* but as the term has expired *by its own limitation,* it is not vacant for an unexpired term, but is vacant until filled *by an election.*

The election is, then, the *appointment;* and the commencement of a term in an office is the time of appointment. 3 Story's Com. 397, 398, 399, 400, 401, 404, 405.

In regard to the circuit judges, there is nothing in the constitution which alters this rule of law. But in regard to the judges of the high court, the rule would be otherwise. If it should so happen that the regular election of one of the judges, whose term had expired, should fail, or from any accident the judge was not elected, it would be the duty of the governor to issue a writ for an election; but as the constitution requires that one of these judges should be elected every two years, in order to preserve the rotation, the term of each one is obliged to commence at the precise expiration of the previous term, otherwise the constitutional provision would be defeated. But if the court should be of opinion

that the failure to hold an election for circuit judge at the expiration of his term, and that a subsequent election would put him in by *relation* from the end of the preceding term, still Judge Huling is the judge, because in such case his term would commence in July, 1840.

. The governor's duty to order the election will not authorize him to restrict the limitation. If the election takes place, the constitution fixes the term, (except in cases of unexpired terms.) State *v.* McClintock, 243; ibid. pages 233–5.

The *commission* and the appointment are wholly distinct. The commission is evidence of the *election;* but is no evidence, nor can it be, except in cases of unexpired terms, of the duration of the term. If it attempts to limit this, it is void. Vide 3 Story, 400, 401, 404, 397, &c.

Under the power which the King of England has to see that the laws are executed, he issues his writs of election. 6 Comyn's Digest, Parliament.

Our constitution says, the governor "shall take care that the law be faithfully executed." See 1 Story's Com. 412; Federalist, 420, 425, 448; 2 Bai. Rep. 223.

No inconvenience. The legislature may fix election at general election. If they have not done that, they may pass a general law that in all cases of elections for judges since the constitution, when the term has expired, the successor should not be elected until the general election; that, as the office exists, is vacant, the governor may fill the vacancy until the election is ordered. But if it were not so, and it were inconvenient, it cannot be helped.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

This case comes up from the eighth judicial district, and it appears from the record that the office of judge of that district is claimed by two individuals, and the question is, which had the constitutional right to hold the office.

The eighth district was formed by act of the legislature in 1836, and the act provided that an election for judge and district attorney should be held on the first Monday and day following in July of that year, at which election Frederick W. Huling was elected judge. At the general election in November, 1837, he was

re-elected; he however still claimed to hold under the election of 1836, but ultimately qualified under the election of 1837. About the expiration of four years from his first election in July, he requested the governor to issue a writ of election, as his time would expire in July, 1840. The governor, however, differed with him in opinion, and refused to order the election, holding that he was in office under the election of 1837, and that his term would not expire until the regular election in November, 1841, and proposed that if he would resign he would issue a writ of election to fill the vacancy until 1841. This Huling did, and at November, 1840, was again re-elected to fill the vacancy occasioned by his own resignation. Under this last election he now claims to hold for four years, the constitutional term.

At the general election in November 1841, the governor issued his writ of election, and amongst other officers directed that a circuit judge should be elected for the term prescribed in the constitution, and James M. Howry, the other claimant, was elected. He presided in the case at bar, and it was on exceptions taken to his authority that the case comes up. The several commissions of Huling, and also that of Howry, were spread upon the record, and with a view to an investigation of the question, such of the above facts as did not properly appear in the record, were admitted in argument.

The language of the 11th section of the 4th article of the constitution, under which both parties claimed the office, is as follows: "The judges of the circuit court shall be elected by the qualified electors of each judicial district, and hold their offices for the term of four years, and reside in their respective districts." The constitution was adopted in 1832, and it was contended that as the 8th district was formed after the constitution was adopted, and after the first general election, that the term of office of the judge of that district commenced at the time of his election, and that he is entitled to hold for the full term. That his condition is different from the judges elected at the first election in May, 1833, as to whom a provision was made for the beginning of their term of office, and that there is nothing in the constitution or law that abridges Huling's term, or requires that it should have expired at the first general election after his election in July, 1836; that un-

der that election he was entitled to hold four years, or until July, 1840; and further, that under his re-election in November, 1840, he must hold the office four years, or at least four years from the July preceding, although the writ of election may have been designed to fill a vacancy which would terminate in November, 1841.

The question which is here propounded rests mainly on the construction which we may give to the constitution. Before we proceed to notice the several provisions which it contains that may properly bear upon the question, it will be proper to notice some of the prominent rules by which constitutions are to be construed, and having done so, it will remain to apply them to the instrument under consideration.

1. The familiar rule that all instruments must be construed according to the sense of the terms used and the intention of the parties, is as applicable to constitutions as to any thing else; perhaps it is more so, as a constitution is but a general form of government, the details being left to legislation. 1 Story's Com. 383. One of the primary objects of a constitution is a harmonious order in the operations of the several departments of the government, and where the instrument is doubtful or not sufficiently specific in its provisions, we may safely conclude that it was not the intention of the framers to produce disorder and confusion.

2. We must in the next place look to the "scope and design of the instrument, viewed as a whole, and also viewed in its component parts." 1 Story's Com. 387. If the design and object be clear, although the provisions may seem to be doubtful, we have a sure guide to a proper construction.

3. Where a constitution is not entirely explicit in itself, and requires construction, it ought not to be so construed as to cripple the government, and render it unequal to the objects for which it is declared to be instituted. 9 Wheat. 1.

These rules, it is believed, will be sufficient to enable us to arrive at a proper conclusion, in their application to the constitution. We shall endeavor to avoid any construction which the instrument will not fairly justify. It is manifest in every feature of the constitution, that it was thought to be best that all officers should hold their offices for a limited tenure, and that they should all be elected directly by the people. Hence definite tenures were fixed for

every office, some longer and some shorter, but the time at which such tenure should commence is a principal point of difference between the counsel in this case. If this can be ascertained, the case is divested of all difficulty, and in order to do this we must have recourse to the several provisions of the constitution which may furnish any light on the subject.

We conceive it to be quite clear that the convention looked to the first Monday in November, biennially, as the day of the general election, and the tenures of the different officers are regulated with a view to that time as a period at which they should begin and end. The shortest term is two years, the next four, and the longest six. The 5th section of the 3d article provides that the members of the house of representatives shall serve for the term of two years from the day of the commencement of the general election, and the 6th section of the same article provides that the representatives shall be chosen every two years on the first Monday and day following in November. Now it is remarkable that the terms "general election" should have been used if it had not been intended that all officers should then be elected. It surely was not intended to call an election general, merely because representatives were to be elected. The next provision is, that the senators shall be elected for four years. The next article establishes the judicial department. The judges of the high court of errors and appeals are elected for six years; the circuit judges for four years, the chancellor for six years, and the judges of the probate courts for two years; but this article is entirely silent as to when these officers shall be elected, or when the several terms shall commence or end. The 13th section provides that the state shall be divided into convenient districts for the election of circuit judges. In the subsequent parts of the constitution, provision is made for the election of all other officers, state and county, but in no instance is it declared when the several terms shall commence. This was reserved for a general provision, and we conceive that it was abundantly made in the 5th section of the schedule. The language is, that "immediately upon the adoption of this constitution the president of this convention shall issue writs of election, directed to the sheriffs of the several counties, requiring them to cause an election to be held on the first Monday and day following in De-

51*

cember next for members of the legislature, at the respective places of holding elections in said counties, which elections shall be conducted in the 'manner prescribed by the existing laws of the state; and the members of the legislature thus. elected shall continue in office until the next general election, and shall convene at the seat of government on the first Monday in January, eighteen hundred and thirty-three; and shall at their first session order an election to be held in every county of this state, on the first Monday and day following in May, eighteen hundred and thirty-three, for all state and county officers under this constitution, (members of the legislature excepted,) and the officers then elected shall continue in office until the succeeding general election and after, in the same manner as if the election had taken place at the time last aforesaid."

This constitution was adopted in the autumn of 1832, and that the government under it might go into operation as soon as possible, the legislature was directed to convene in January, and provide for a general election to take place in May, and the officers then elected were to hold their offices from that time, in the same manner as if they had been elected at the general election in November, thus giving them six months over the constitutional term, in order to let their terms expire at a regular election. We have in this clause an additional recognition of the first Monday in November biennially as the time for the general election, and we have also conclusive evidence that it was intended that the term of all officers should regularly expire at that time. To accomplish this, the first officers elected under the constitution were required to hold for a longer period than those who might be subsequently elected. This was undoubtedly for the sake of uniformity. No other reason can be given for it. It is admitted by counsel, that in regard to the officers first to be elected, their terms were to be regulated by the general elections; but it is insisted that this rule does not apply to those who might be elected to fill offices subsequently created. We cannot agree with counsel that the office of. judge of the 8th judicial district was an office created by the legislature. The district was created by the legislature, but the office was created by the constitution. The constitution created the office without reference to any district. There was no judicial district at the time the constitution was adopted; all districts had

been abolished. As well might we say, therefore, that the legislature created the office of circuit judge for the four districts which were organized or established by the first legislature which met in January, 1833. The constitution provided that the state should be laid off into convenient districts, and when so laid off, judges were to be elected by virtue of the constitution, not by virtue of the law. The term of four years is prefixed to the office. The constitution was operative over the whole state, and if it was essential to have uniformity in one part, it was in another. I can see no reason why the period of the regular election should be regarded as the proper limit of the term of one judge more than another. Let us suppose that the first legislature had failed to provide for the election of judges for the four districts which were then created, or that the election failed in one or more districts, and that in reality no election took place until 1834, how long would a judge then elected have held his office? I should imagine only until the succeeding general election; and yet the case before us is precisely such a one in principle. If it was thought to be important that officers in one part of the state should be elected at the general election, it must be equally so in regard to other parts of the state.

Let us look at the practical operation of the system, as contended for. If a judge of a new district is to hold his office four years from his election, other officers of new counties must hold in the same way. Nearly half of the counties of the state have been created since the formation of the constitution, and others may be formed, and supposing the elections of officers in such counties to have taken place at irregular periods, the provision in the constitution establishing the general election would be virtually abolished. We should then have one half of the state electing officers at irregular periods. Elections, instead of being biennial, would be monthly. Confusion, irregularity, and disorder would be the consequence.

Our system was thought by many to be a bold experiment in the science of government; and we cannot be insensible that probable abuses of the elective franchise were urged against it; and nothing is better calculated to produce those abuses than frequency of elections.

But, in truth, the plan contended for would produce disorder throughout the whole state, for if there is no uniform time for the beginning of terms of office, then each officer must hold the full period. It will not do to say that a judge in one part of the state holds his office for four years, and that another, elected to fill a vacancy, can only hold for the residue of the term. I can see no just reason for drawing a distinction. If the constitution has not provided uniformity throughout the whole state, it has not been provided for any part of it. In the great variety of officers we elect, it is no stretch of imagination to suppose that many of the incumbents will vacate their offices in the course of every year. On the principle contended for, each successor would hold for his full term, and thus it is easy to perceive, that before many years the utmost confusion would be the consequence. It would require an executive officer of extraordinary ability and energy to keep the several offices filled. Elections would consume much of the time of the people, and thus, instead of securing to themselves the enjoyment of a high privilege, they would have entailed an evil of no ordinary magnitude.

But, say the counsel, we are not to look to the consequences; we must pronounce the law as it is, regardless of consequences. This is true in one sense, but in a case like the present we may properly look to consequences. We are endeavoring to ascertain the intention of the framers of the constitution; if the evils mentioned are so apparent to us, is it not fair to suppose that they must have been foreseen by the convention? We must suppose the evils were quite as apparent to that body as they are to us, and it would be an unjust and forced interpretation, to construe the constitution so as to incur evils which were apparent, when a different interpretation, and one which has the best foundation in the instrument itself, would avoid them. We cannot by mere construction attribute folly to the convention, if the constitution will fairly admit of a different construction. These evils afford an unerring evidence that the intention of the convention was different from that contended for by the counsel for the plaintiff in error. Their construction is also contrary to the scope and design of the instrument. Its evident tendency would be to cripple the government, and defeat its object. The constitution was designed to

be permanent, or at least immediate changes were not anticipated. It was designed as a form of government which could be conveniently carried into practical operation, and, properly construed, its objects are accomplished without difficulty; but if it is to be construed as counsel have contended, its operations would be almost, if not entirely impracticable. Hence it is a fair mode of reasoning to look to the consequences for the purpose of ascertaining the intention of the framers of the constitution, and when such consequences must have been so entirely apparent, and so fraught with evil, we are forced to conclude that the design was to avoid them.

By providing for a general election, it was meant that it should not only be general as to all officers whose terms had expired, but that it should be general throughout the state. In 1832, not one half of the state had been laid off into counties, and the convention must have looked to the subsequent division of the whole state into counties. Can it be supposed that this general provision was to be regarded as operating only on that portion of the state which was then legally organized, and that as to the remainder, there was to be no fixed time for the general election? Such a spectacle would be a singular one in a well organized government. By providing when a general election should be held, a sufficient indication was given as to when the terms of the several officers should commence; and if the provision in the schedule had been omitted, it would still be sufficiently clear that all officers were to hold in reference to the regular periodical elections; but the fifth section of the schedule places the matter beyond a doubt.

Counsel rely entirely on the force of the provision contained in the 11th section of the 4th article, which declares that the circuit *judges* shall be elected by the qualified electors of each judicial district, and hold their offices for the term of four years. This section, considered alone, might justify their construction; but the whole instrument is to be taken together, with reference to all its parts. Other parts of the instrument provide that a general election shall be held biennially, in November, for the purpose of electing all officers under the constitution. The term of four years, then, is to be taken in connection with this other provision.

Analogies have been drawn from the operations of the federal government under the constitution of the United States, but we

do not think such extraneous aid at all necessary. Our constitution is, in this respect, its own interpreter. By way of illustrating our views, suppose we put a case which may arise under the constitution. The senators are elected for four years; at the first election they were to be divided into two classes, and additional senators are also to be classed, but how or when does their term commence? The legislature, at every apportionment, may create new senatorial districts, but when does the term of senators, who may be elected immediately after such district is created, commence or end? They are to hold for two and four years, and may be elected at a time different from the regular election; in such case they would have the same right to hold for the full term from their election that a circuit judge has. It is plain, however, that such senators' terms would expire at a regular election. A different interpretation would run the legislative department of the government into confusion.

Counsel have insisted that the constitution contains no specific provision in regard to the commencement and end of the term of other officers than those elected at the first election; and that it would be adding to the constitution to apply it to others: we answer, that the constitution has no where provided that officers not elected at a general election shall hold from the time of their election; and it would surely be adding an additional clause if we were so to hold; and can any good reason be given why such a design should have been entertained as to officers that might at any subsequent time be elected, when a different design was so plainly expressed, and which is admitted to exist, in reference to the officers first to be elected? We have heard none.

A further difficulty suggests itself. How are these irregular elections to be brought about? Take, for example, the eighth district; the judge was elected in July, 1836; he claimed to hold under that election until July, 1840, but the law under which he was first elected did not provide that an election in said district should be held every four years thereafter, nor does any general law provide for such cases. How, then, was another election to be held? In order to avoid this difficulty, it has been insisted that it is the duty of the governor to order an election. The governor, like other officers, has some limit to his powers. The constitution

Smith, Appellant, *v.* Halfacre.

declares that he shall issue writs to fill vacancies; he is also to issue writs for the general elections, but no further provision is to be found in relation to his duty, other than that general direction which requires that he should see that the laws are faithfully executed. In this instance, however, there is no law to be executed, nor is there any constitutional provision. The constitution has provided for elections in two instances: first, for general elections; and second, for elections to fill vacancies. There is no general election in July, nor is it pretended that there was a vacancy; and hence the governor's power in this respect, to say the least of it, would be very doubtful. But suppose the law had provided for the election of judges and other officers in the eighth district in July, 1840, and at regular biennial periods thereafter, would it have been constitutional? If so, the legislature may, in effect, change the time of the general election. But let us suppose such a law to exist, and look at its consequences. The first election was in July, 1836, and judges and clerks were then elected, and perhaps other officers. Four years after that time, another regular election takes place; thus we should have two regular periodical elections—one under the constitution, and one under the law. But let us look further: new districts have been, and will continue to be created, and probably the law creating them will fix the elections at different periods, and thus we should, for every district, have a regular election held at different times; and the same may be said of every new county created by the legislature. Suppose a county to be created at the present session, and the officers should be elected in May, and that such county should be attached to the eighth district: on the supposed rule, the officers then elected would hold for two years from the time of their election. At the expiration of that time they must be re-elected, which would be in May, 1844; thus, in the same county, we should have one regular election in May, biennially, for county officers; a regular election in July, every four years; and the general elections in November, biennially. This would produce too much discord to justify a conclusion that the system was intended so to operate. In every possible aspect in which we have been enabled to place the question, the conclusion irresistibly forces itself on us, that the

Smith, Appellant, *v.* Halfacre.

convention intended that all terms of office should begin and terminate with the regular election, and that this rule should apply as well to officers elected at any subsequent period of time, as to those who were to be elected at the first election; and that consequently Huling was first elected until the general election in 1837; that his regular term then commenced, and ended on the first Monday of November, 1841; and that James M. Howry, being then legally elected, is entitled to hold the office for four years from that time.

The judgment is affirmed.