Bartley, C. J.
I can not concur in the decision made in this case. There is no error, in my opinion, in the proceedings of the court of common pleas, for which the judgment should be reversed.
There was no satisfactory proof of the insanity of the accused, and the verdict upon this ground should be conclusive. The test of insanity adopted by the common pleas, in the charge to the jury, does not so conflict with the established law on this subject as to furnish any ground for the reversal of the judgment. It was incumbent upon the defense to establish ^affirmatively the plea of insanity by clear and satisfactory evidence. This was not done.
It is not made to appear that there was any misconduct on the part of the jury, which would have justified the granting of a new trial; and it requires a clear case to justify the reversal of a decision refusing a new trial. Bobbs v. Lambdin, 7 Miss. 601. After a full trial upon the merits, the grounds for disturbing the judgment of the court below must be affirmatively shown by the *68 seeking the reversal, and must rest upon reasons which are strong and clear. It is said by high authority, that, on a motion for a' new trial, every presumption is to be made in favor of the verdict of the jury and the correctness of the instructions of the court. And certainly is this the case on a writ of error to reverse the decision of the court below refusing to set aside a verdict and grant a new trial.
It is not even pretended that any conversation took place between any of the jurors and persons out of the jury-room, relating to the subject-matter or merits of the case. And the newspaper publication of a part of the charge of the court to the jury, which it appears they had, is admitted to contain a correct statement of all the charge of the court on the particular point to which it related. Even admitting, therefore, some impropriety on the part of the jury, it is undeniable that nothing is shown to have occurred tending in any manner to mislead or influence the jury in their verdict in the case.
The testimony admitted to prove the death of Mrs. G-rcon by poison administered by the accused, was, in my opinion, competent on three grounds: 1. It became a material element of proof in the case by the admissions of the prisoner proven on the trial, connecting the sickness and death of Mrs. Green with the case byway of comparison or otherwise. 2, It was competent as a collateral fact, to prove knowledge and intention on the part of the accused, which were material *in the case. The intention of the accused on a trial for murder always constitutes a material and most important element of proof. In this instance, the charge was that the murder was produced by a j>oisonous drug. It was, therefore, material for the state to show that the accused knew the effect which this article would produce on the human constitution, and especially in th'proportion as well as in the manner in which it was given to the deceased. The poisonous or destructive quality of arsenic is not apparent to the eye like that of the use of the dagger or the gun. A knowledge of the destructive effect of this poison is to be learned by chemical analysis, by actual experiment, or by information communicated to the understanding of the person. There are many persons who do not know that there is any such drug as arsenic— many who can not distinguish it from lime or other white sub'stance, and many more who do not know, with any degree of certainty, its influence on the human constitution. And there are *69 many intelligent persons who do not know the proportion or the •manner in which this poison can be administered to a human being so as to produce death in the way in which the deceased was killed. Collateral facts tending to show, not only that the accused knew that this poison was destructive of human life, but also that she had learned, by actual experiment, the proportion and manner ■of administering it so as to produce death, were competent evidence on the trial of this case. This is fully sustained by sound reason, as well as by authority. Mr. G-reenleaf, in his work on Evidence, lays down the rule thus, vol. 1, sec. 53 :
“In some cases, however, evidence has been received of facts which happened before or after the principal transaction, and which had no direct or apparent connection with it; and therefore •their admission might seem, at first view, to constitute an exception to this rule. But those will bo found to have been cases in which the knowledge or intent of the party was a material fact, on which the evidence, apparently collateral, and foreign to the main subject, had a direct boariug, and was therefore admitted. Thus, when the question was, whether the defendant, being the acceptor ■of a bill of exchange, either knew that the name of the payer was ■fictitious, or else had given a general authority to the drawer to •draw bills on him, payable to fictitious persons, evidence was admitted to show that he had accepted other bills, drawn in like manner, before *it it was possible to have transmitted them from the place at which they bore date. So, in an indictment for knowingly uttering a forged document or a counterfeit bank note, proof of the possession, or of the prior or subsequent utterance of false ■documents or notes, though of a different description, is admitted, as material to the question of guilty knowledge or intent. So in actions for defamation, evidence of other language spoken or written by the defendant at other times is admissible, under the general issue, in proof of the spirit and intention of the party, in uttering the words, or publishing the libel charged ; and this, whether the language thus proved be in itself actionable or not. Cases of this sort, therefore, instead of being exceptions to the rule, fall strictly within it.”
This is consistent with the doctrine of other elementary writers on the subject of the law of evidence. And Mr. Justice Story has given so full and lucid an exposition of this rule in the case of Bottomly v. United States, 1 Story, 142, that I deem it proper to copy his language, which is as follows:
*70 “The objection taken to all these three last portions of the evidence excepted to is, that it is res inter alios acta, and upon other-occasions; and, therefore, not properly admissible to establish a fraud in the case of the importation of the goods now before the .court. But it appears to me clearly admissible upon the general doctrine of evidence in cases of conspiracy and fraud, where other acts in furtherance of the same general design are admissible : first, to establish the fact, that there is such a conspiracy and fraud; and, secondly, to repel the suggestion that the acts might be fairly attributed to accident, mistake, or innocent rashness or negligence. In most cases of conspiracy and fraud, the question of intent or purpose, or design in the act done, whether innocent or illegal, whether honest or fraudulent, rarely admits of direct and positive proof; but it is to be deduced from various circumstances of more or less stringency, and often occurring, not merely between the same parties, but between the party charged with the conspiracy or fraud and third persons. And in all cases, where the guilt of the party depends upon the intent, purpose, or design, with which the act was done, or upon his guilty knowledge thereof, I understand it to be a general rule that collateral facts may be examinod into, in which he bore a part, for the purpose of establishing such guilty intent, design, purpose, or knowledge. Thus, in a prosecution for uttering a bank note, or a bill of exchange, or a promissory note, with knowledge of its being forged, proof that the prisoner-had uttered other forged notes or bills, whether of the same or of a different kind, or that he had other forged notes or bills in his-possession, is clearly admissible, as showing that he knew the note or bill in question to be forged. So the law is laid down in Mr. Phillips and Mr. Amos’ excellent treatise on Evidence, in the last edition. The same doctrine is applied, in the same work, to a prosecution for uttering counterfeit money, where the fact of having in his possession other counterfeit money, or having uttered other counterfeit money, is proper proof against the prisoner *to show his guiity knowledge. 1 have looked into the authorities, and they fully support the statement of the learned writers. The King v. Wylie, 4 Bos. & Pul. 92, is very strong to the purpose; as also Rex v. Ball, 1 Russ. & Ryan Cr. Cas. 132, and Rex v. Ball, 1 Moody Cr. Cas. 470, and Rex v. Hough, 1 Russ. & Ryan, 120. Many other cases might be easily put, involving the same considerations. Thus, upon an indictment -for receiving stolon goods, evidence is admissible that the prisoner had received, at various other times, different parcels of goods which had been stolen from the same persons, in proof of the guilty knowledge of the prisoner. So in an indictment fora conspiracy to create public discontent and disaffection, proof is admissible against the prisoner, that, at another meeting held for an object professedly similar, and of which the prisoner was chairman, resolutions were passed of a character to create such discontent and disaffection. *71 In short, whenever the intent or guilty knowledge of a party is a material ingredient in the issue of the case, these collateral facts, tending to establish such intent or knowledge, are proper evidence. In many eases of fraud it would be otherwise impossible satisfactorily to establish the true nature and character of the act.”
The third ground on which this testimony became material on the trial below, was its bearing upon the question of the prisoner’s mental competency. The conduct of the prisoner generally, and especially toward those with whom she was brought into intimate association as a domestic, became a material subject of inquiry, touching the subject of her sanity or insanity. It appears to be conceded that this testimony would have been competent touching the defense of insanity, but it is said that it did not become material till after the defendant had offered evidence on her part to support the defense of insanity. Admitting this to be correct, and that the testimony was incompetent at that particular stage of the case in which it was introduced, if it became material at a subsequent stage of the case, the admission of it could not have furnished any ground for a new trial. The error, if any,, was cured when, by the introduction of a new element into the case by the defendant, it became competent. A judgment should never be reversed because evidence which had become material in the case, was admitted at an improper stage of the case.
When, therefore, it is taken into consideration that knowledge, intention, malice, and sanity of the accused were all involved in the investigation on the trial in the court below, the *circumstance of the sickness and death of Mrs. Green fell clearly within the rule, that all facts and circumstances are admissible in evidence which are in their nature capable of affording a reasonable presumption or inference as to any material fact in the case.
It appears to be conceded on all hands that the deceased came to his death by the act of the accused. If, therefore, the defense of insanity was not available, the verdict of the jury was correct, and founded on the real truth in the case, and nothing but substantial justice could have been done by it. No new trial should be granted or judgment reversed on writ of error, where substantial justice has been done in a trial upon the true merits of the case.